IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-46-D

| | | |
|---|---|---|
| LTC DONALD SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PAT MCCRORY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 18, 2016, Lt. Col. Donald Sullivan ("plaintiff" or "Sullivan"), proceeding pro se, filed a complaint under 42 U.S.C. §§ 1983 and 1985 and North Carolina law against twelve defendants, including North Carolina Governor Pat McCrory, North Carolina Attorney General Roy Cooper, New Hanover County District Attorney Ben David and Assistant District Attorney Lindsay Roberson, New Hanover County Sheriff Ed McMahon, Wake County District Attorney Lorrin Freeman, and several members of the North Carolina Highway Patrol. Compl. [D.E. 1]. All defendants have filed motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or (6) [D.E. 7, 16, 20]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Sullivan about the motions, the consequences of failing to respond, and the response deadlines [D.E. 9, 22]. Sullivan moved to amend his complaint and requested a stay on responding to defendants' motions until the court ruled on the motion to amend [D.E. 19]. On October 11, 2016, the court granted Sullivan's motion to amend, and directed Sullivan to file any response in opposition to the motions on or before October 24, 2016 [D.E. 35]. Sullivan chose to file a second motion to amend in lieu of any response in opposition [D.E. 36]. Defendants

responded in opposition to that motion [D.E. 37–38], and Sullivan replied [D.E. 39–40]. As explained below, the court grants plaintiff's second motion to amend and grants defendants' motions to dismiss.

I.

As for Sullivan's second motion to amend, Sullivan seeks: "1) [t]o correct an oversight in the caption [to include an additional member of the State Highway Patrol, Major J.A. Cotton, as a defendant]; 2) to eliminate the claims for damages; and 3) to replace said damage claims with administrative remedies." Pl.'s Replies in Supp. 2d Mot. to Amend [D.E. 39–40] 1–2; see Compl. ¶ 12 (naming Cotton as a defendant); 2d Mot. to Amend [D.E. 36] 1. Thus, Sullivan's proposed amendment does not materially change either his factual allegations or the pending motions. See [D.E. 16] 1; [D.E. 38] 2. The court therefore grants Sullivan's second motion to amend.

Sullivan's complaint arises out of a traffic stop and citation which occurred on March 20, 2013. Compl. ¶ 23. Sullivan was driving "on a sparsely traveled country road" when he "approached flashing blue lights from three State Highway Patrol units[.]" Id. Sullivan did "not see[] any signs of a license checking station;" therefore he did not stop until "one of the troopers yelled for" him to do so. Id.

Defendant Phillips, a North Carolina Highway Patrolman, approached Sullivan's vehicle and asked for his driver's license, which Sullivan produced. Compl. ¶ 23. Phillips recognized Sullivan "from a previous incident years earlier" and asked whether Sullivan was a "sovereign" and had a gun in the vehicle. Id. ¶¶ 23–24. Sullivan indicated that he had a gun in a holster on his hip and "made the apparent mistake of tapping [his] thigh and looking toward the sidearm." Id. ¶ 24. Phillips "then went ballistic, pulled out his sidearm and pointed it at [Sullivan's] face through the open window" while commanding Sullivan to place his hands outside the window and "began yelling in a very

2

frightened voice to the other officers" for assistance and informed the other officers that Sullivan had a gun and was "a 'sovereign.'"[1] Id.

Sullivan contends that he "remained very still" and compliant with all of Phillips's orders, while Phillips "looked really out of control. His hand was shaking like a leaf, and his finger was on the trigger." Compl. ¶ 26. Defendants Maness and Kirk "ran to assist Phillips who apparently thought he needed help." Id. ¶ 27. All three defendants kept their guns pointed at Sullivan's face while ultimately removing Sullivan from his vehicle, handcuffing him, confiscating his "seven hundred dollar sidearm, magazines and ammunition[,]" and searching Sullivan's vehicle without requesting Sullivan's consent and over his objections. Id. ¶¶ 28–33.

Phillips issued Sullivan a misdemeanor citation for carrying a concealed weapon. Compl. ¶ 35. On September 17, 2013, the New Hanover County District Court dismissed the charge "due to [Sullivan's] objection to a trial on a citation[.]" Id. ¶ 36. An assistant district attorney issued "a 'Statement of Charges'" to retry the case, and on October 14, 2013, "the charge was again dismissed by the court after [defendant] Assistant District Attorney Roberson had presented her entire case; and [Sullivan] had cross-examined her witness[,]" defendant Phillips. Id. Defendants Roberson and David again refiled the charge against Sullivan "on a 'Misdemeanor Criminal Summons[.]'" Compl. ¶ 37. The court rescheduled the hearing several times between December 2013 and November 2014.

---

[1] Sullivan

admit[s] that [he is] the son of naturally born citizens, born in the sovereign State of North Carolina, and the descendant of soldiers of both the Revolutionary War against King George and the War of Northern Aggression against "King Abraham", and a member of that "Posterity" cited in the Preamble to the Constitution of the United States.

Compl. ¶ 25. Sullivan contends, however, that he is "not a 'sovereign citizen' in the context proffered by Phillips and as presented in the mandatory 'Sovereign Training' received by all law enforcement officers of North Carolina in 2013." Id.

3

Id. ¶¶ 37, 40. "In the meantime, unknown to [Sullivan] and for reasons unknown to [Sullivan], upon information and belief, David had presented the charge to the grand jury, with Phillips again allowed to testify. The grand jury issued an indictment based upon Phillips's perjured testimony, which moved the case to superior court." Id. ¶ 40. After several motions hearings and other court appearances, and further continuances of the trial between November 2014 and July 2015, an assistant district attorney other than defendant Roberson informed Sullivan that she had "decided to dismiss [the] case having determined that the state was barred from prosecuting [Sullivan] due to double jeopardy having attached." Id. ¶¶ 41–48. On July 9, 2015, defendant Pope returned Sullivan's property seized during Sullivan's arrest. Id. ¶ 50.

Sullivan contends that defendant Phillips "committed . . . several acts of criminal perjury by repeatedly lying about the events of 3-20-13 under direct and cross examination." Compl. ¶ 36. Between October 2013 and January 2016, Sullivan repeatedly and unsuccessfully attempted to pursue criminal perjury charges against Phillips. See id. ¶¶ 36–39, 50–67. Sullivan's efforts included meetings with defendants David, Pope, and a deputy sheriff in defendant McMahon's office, a written complaint "to the DPS-State Highway Patrol Internal Affairs . . . office[,]" and extensive correspondence with the offices of defendants David, McCrory, Cooper, and Freeman. Id. & Exs. [D.E. 1-1 through -7] (copies of letters Sullivan sent to various defendants and others). Defendants Cotton and Pope closed their investigations. Id. ¶¶ 38, 50. Defendants David and Freeman declined to proceed with any criminal charges against Phillips. See id. ¶¶ 53–55, 66. A captain in the New Hanover County Sheriff's Department, under the supervision of defendant McMahon, met with Sullivan but declined to "investigate another state agency" and "said his office would not take [Sullivan's] report, an obvious denial of [Sullivan's] right to the due process of the law and equal treatment under the law." Id. ¶ 51. A representative from McCrory's office informed

4

Sullivan "that the governor's office lacked jurisdiction to do anything to help." Id. ¶ 52. Defendant Cooper did not respond to Sullivan's letters. Id. ¶¶ 39.

Sullivan asserts violations of 42 U.S.C. §§ 1983 and 1985 and the North Carolina Constitution. Compl. ¶¶ 71–80. Sullivan sues all defendants in their individual and official capacities and seeks "sanctions" and injunctive relief. Compare Compl. ¶¶ 59–60, 76, 81 with Pl.'s 2d Mot. to Amend [D.E. 36] 2–3.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Sullivan, as the party asserting that this court has subject-matter jurisdiction, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. Evans, 166 F.3d at 647.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct.

5

1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Defendants assert that the Eleventh Amendment bars Sullivan's claims for monetary damages against them in their official capacities. Mem. in Supp. Mot. to Dismiss [D.E. 8] 4–5; Mem. in Supp. Highway Patrol Defs.' Mot. to Dismiss [D.E. 17] 4–6. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The Eleventh Amendment provides immunity from "suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Quern v. Jordan, 440 U.S. 332, 337 (1979); see Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). The Eleventh Amendment also "protects state agents and state instrumentalities" and confers an entitlement of "an immunity from suit rather than a mere defense to liability." Constantine, 411 F.3d at 479, 482 (quotations and emphasis omitted). Absent waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for damages in federal court against state agencies and other government entities that are characterized as "arm[s] of the State." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 (1997) (quotation omitted). The bar

6

extends to heads of agencies sued in their official capacities. Will, 491 U.S. at 70–71; see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Thus, in their official capacities, all defendants are immune from suit for monetary damages. See, e.g., Smith v. McCarthy, 349 F. App'x 851, 859 n.13 (4th Cir. 2009) (per curiam) (unpublished); Ballenger v. Owens, 352 F.3d 842, 844–45 (4th Cir. 2003); Lynn v. West, 134 F.3d 582, 587 (4th Cir. 1998).[2]

B.

As for defendants David, Freeman, and Roberson, prosecutors are absolutely immune when carrying out the judicial phase of prosecutorial functions, including initiating a judicial proceeding or appearing in court. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 269–70 (1993); Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Sullivan's allegations against these defendants complain of actions taken within the scope of their prosecutorial functions. Thus, the court dismisses Sullivan's claims against defendants David, Freeman, and Roberson.

C.

As for Sullivan's individual-capacity claims, the court begins with any conspiracy claim under 42 U.S.C. § 1985. To state a claim, Sullivan must plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). To show joint, concerted action, plaintiffs must, at minimum, provide "specific

---

[2] Although "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law," Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Lee-Thomas v. Prince George's Cty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012), Sullivan's request for injunctive relief lacks merit. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 105–13 (1983). Thus, the court dismisses Sullivan's request for injunctive relief.

circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." See id. Conclusory allegations of a conspiracy do not satisfy this "meeting of the minds" element and therefore fail to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995); Gooden v. Howard Cty., Md., 954 F.2d 960, 970 (4th Cir. 1992) (en banc). Sullivan fails to plausibly allege a "meeting of the minds" between any of the named defendants or any shared objective of violating his constitutional rights. Cf. Iqbal, 556 U.S. at 677–84; Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 796–98 (E.D.N.C. 2015). Thus, Sullivan fails to state a claim under section 1985.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Filarsky v. Delia, 132 S. Ct. 1657, 1661–62 (2012); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Negligence claims are generally not actionable under section 1983. See, e.g., Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995). Moreover, section 1983 does not impose liability for violations of duties of care arising under state law. See, e.g., DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 201–02 (1989).[3]

---

[3] Thus, to the extent Sullivan alleges that these defendants acted in a "grossly negligent" manner, Compl. ¶¶ 73–74, he fails to state a claim under section 1983. See Carter v. Baltimore Cty., Md., 95 F. App'x 471, 476 (4th Cir. 2004) (per curiam) (unpublished).

8

Sullivan challenges his detention, his arrest, and the seizure of his firearm in the course of the traffic stop by defendants Phillips, Maness, and Kirk. Compl. Count I [D.E. 1] ¶¶ 73–76. "The temporary detention of an individual during a traffic stop, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure." Norton v. Rosier, 638 F. App'x 204, 206 (4th Cir. 2016) (per curiam) (unpublished); Whren v. United States, 517 U.S. 806, 809–10 (1996). The court evaluates Sullivan's detention under Terry v. Ohio, 392 U.S. 1, 19–20 (1968). Thus, defendants' actions in stopping Sullivan must be "justified at [the] inception," and their subsequent questioning and search "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20; see Norton, 638 F. App'x at 206; United States v. Green, 740 F.3d 275, 279 (4th Cir.), cert. denied, 135 S. Ct. 207 (2014).

As for the first prong under Terry, the United States Supreme Court has upheld traffic checkpoints in "limited circumstances" as constitutional. See City of Indianapolis v. Edmond, 531 U.S. 32, 37–39 (2000) (checkpoint to verify drivers' licenses and vehicle registrations is permissible);[4] Mich. Dep't of State Police v. Sitz, 496 U.S. 444, 455 (1990) (sobriety checkpoint is permissible); United States v. Martinez–Fuerte, 428 U.S. 543, 566–67 (1976) (immigration checkpoint is permissible). Moreover, Sullivan has not alleged any circumstances rendering his initial stop unconstitutional. Cf. Norton, 638 F. App'x at 206. Furthermore, Sullivan's allegations demonstrate that defendants were justified in further detaining and ultimately arresting Sullivan based on Sullivan's apparent attempt to avoid the checkpoint, Phillips's recognition of Sullivan from a prior encounter, and Sullivan's conduct in response to Phillips's question concerning possessing

---

[4] Although Sullivan's allegations do not make the circumstances of his initial stop entirely clear, it appears that defendants Phillips, Kirk, and Maness were conducting a checkpoint for drivers' licenses. See [D.E. 1-6] 2.

9

a weapon. See, e.g., Terry, 392 U.S. at 27; Arizona v. Johnson, 555 U.S. 323, 327, 333 (2009); United States v. Paetsch, 782 F.3d 1162, 1173–76 (10th Cir.), cert. denied, 136 S. Ct. 195 (2015); United States v. Bell, 483 F. App'x 716, 718 (3d Cir. 2012) (unpublished); United States v. Lewis, 674 F.3d 1298, 1305–06 (11th Cir. 2012); United States v. Smith, 396 F.3d 579, 584–85 (4th Cir. 2005). Sullivan's allegations concerning defendants' subjective motivations and false testimony do not alter the court's analysis. See Whren, 517 U.S. at 812; Massey v. Ojaniit, 759 F.3d 343, 354–56 (4th Cir. 2014). Sullivan also has failed to state a claim concerning being handcuffed in the course of his arrest absent any allegation that defendants used excessive force or injured Sullivan in some way. See, e.g., Graham v. Connor, 490 U.S. 386, 396 (1989); Young v. Prince George's Cty., Md., 355 F.3d 751, 755 (4th Cir. 2004); Brown v. Gilmore, 278 F.3d 362, 369–70 (4th Cir. 2002); Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999); N.C. Gen. Stat. § 15A-401(d). Finally, the court rejects any claim based on the confiscation of Sullivan's firearm and ammunition in the course of his arrest, where the police returned the firearm and ammunition to him following the dismissal of the criminal charges. See Rodgers v. Knight, 781 F.3d 932, 941–42 (8th Cir.), cert. denied, 136 S. Ct. 232 (2015); Meeks v. Larsen, 611 F. App'x 277, 286 (6th Cir. 2015) (per curiam) (unpublished); Dunkelberger v. Dunkelberger, No. 14-CV-3877 (KMK), 2015 WL 5730605, at *20 (S.D.N.Y. Sept. 30, 2015) (unpublished) (collecting cases); Kelly v. Conner, No. 3:13-CV-00636-DSC, 2015 WL 3407831, at *6 (W.D.N.C. May 27, 2015) (unpublished). Thus, Sullivan has failed to state a claim in count one.

Alternatively, these defendants assert that they are entitled to qualified immunity. Mem. in Supp. Highway Patrol Defs.' Mot. to Dismiss [D.E. 17] 8–11.[5] The doctrine of qualified immunity

---

[5] To the extent Sullivan no longer seeks any form of monetary damages (it is unclear what Sullivan means by "sanctions" in lieu of monetary damages), the defense of qualified immunity does

provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (per curiam); City & Cty. of S.F. v. Sheehan, 135 S. Ct. 1765, 1774 (2015); Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (per curiam); Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Taylor, 135 S. Ct. at 2044; Sheehan, 135 S. Ct. at 1774; Carroll, 135 S. Ct. at 350.

The court asks two questions to determine whether qualified immunity applies: first, "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right," and second, "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quotation omitted); see Reichle, 132 S. Ct. at 2093; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). Courts may decide which question to address first. Pearson, 555 U.S. at 236. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (alterations and quotations omitted). The United States Supreme Court does "not require a case directly on point, but existing precedent must have

---

not apply. See Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015). Nevertheless, federal injunctive relief is an "extraordinary remedy" only awarded under section 1983 if the plaintiff shows "that there is a real or immediate threat that he will be wronged again in a similar way." Id. at 885–86 (quotation omitted). Sullivan has failed to demonstrate a need for injunctive relief. See, e.g., Lyons, 461 U.S. at 105–13.

11

placed the statutory or constitutional question beyond debate." Id.; see Reichle, 132 S. Ct. at 2093. A defendant is entitled to dismissal on qualified-immunity grounds if the answer to either question is "no." See, e.g., Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080; Miller v. Prince George's Cty., Md., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

Even viewing Sullivan's allegations in the light most favorable to him, Sullivan fails to state a constitutional violation. See, e.g., Rodgers, 781 F.3d at 939–4; Meeks, 611 F. App'x at 286–87; Massey, 759 F.3d at 354; cf. Lewis, 674 F.3d at 1306–07. Thus, the court dismisses Sullivan's individual-capacity claims against defendants Phillips, Maness, and Kirk.

Next, Sullivan alleges that defendants McCrory, Cooper, David, Roberson, Freeman, Grey, Cotton, Pope, and possibly McMahon "acted either in collusion or separately or ignorantly to deny my right of due process and equal access to justice" where they refused to prosecute Phillips for his testimony or to allow Sullivan to present his criminal case against Phillips to "the people's grand jury[.]" Compl. Count II [D.E. 1] ¶¶ 77–81.[6] Sullivan fails to state a claim. "[T]he United States and its attorneys have the sole power to prosecute criminal cases in the federal courts," and private citizens cannot petition federal courts to compel the criminal prosecution of another person. Maine v. Taylor, 477 U.S. 131, 136–37 (1986); see Leeke v. Timmerman, 454 U.S. 83, 86–87 (1981) (per

---

[6] Sullivan has not specifically named defendant McMahon in either count of his complaint or amended complaint; however, Sullivan alleged that McMahon "admitted through his agent that he was not going to investigate another state agency" in violation of his "job . . . to make and investigate reports of criminal activity." Compl. ¶ 51. Sullivan also alleges that McMahon received a blind copy of a letter Sullivan wrote to Governor McCrory "asking for his assistance in investigating Phillips." Id. ¶ 52; see Mem. in Supp. Def. McMahon Mot. to Dismiss [D.E. 21] 1 ("the only allegations in Plaintiff's Complaint relating to or mentioning this Defendant are paragraphs 51 and 52"). Thus, the court connects defendant McMahon to this count of Sullivan's complaint.

12

curiam); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Additionally, to the extent Sullivan attempts to proceed under a "supervisory authority" theory of liability against any defendant in connection with this claim, Compl. ¶ 69, the doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 556 U.S. at 676–77; Monell, 436 U.S. at 694; Carter, 164 F.3d at 220–21; Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Thus, Sullivan has failed to state a claim in count two.

Finally, in light of the dismissal of Sullivan's federal claims, the court declines to exercise supplemental jurisdiction over his state-law claims, and dismisses those claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); Sullivan v. North Carolina, No. 7:11-CV-238-D, 2012 WL 3762445, at *5 (E.D.N.C. Aug. 29, 2012) (unpublished).

III.

In sum, the court GRANTS plaintiff's second motion to amend [D.E. 36], GRANTS defendants' motions to dismiss [D.E. 7, 16, 20], and DISMISSES plaintiff's section 1983 and 1985 claims. The court DISMISSES WITHOUT PREJUDICE plaintiff's state-law claims. The Clerk shall close the case.

SO ORDERED. This 15 day of December 2016.

JAMES C. DEVER III
Chief United States District Judge

13